IN THE CIRCUIT COURT FOR
PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| GARY SUITER<br>3763 Foxhall Drive<br>White Plains, Maryland 20695<br><br>    Plaintiff,<br><br>v.<br><br>B. FRANK JOY, LLC<br>5535 Kilmer Place<br>Hyattsville, Maryland 20781<br><br>    Serve On:<br><br>The Corporation Trust Incorporated<br>351 West Camden Street<br>Baltimore, Maryland 21201<br><br>And<br><br>THE JOY COMPANIES, INC.<br>5355 Kilmer Place<br>Hyattsville, Maryland 20781<br><br>    Serve On:<br><br>The Corporation Trust Incorporated<br>351 West Camden Street<br>Baltimore, Maryland 21201<br><br>    Defendants. | *<br>*<br>*<br>*<br>*  Case No. CAL314623<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND JURY DEMAND

Now comes Plaintiff Gary Suiter, by and through counsel, and for his Complaint against

Defendants B. Frank Joy, LLC, ("B. Frank Joy") and The Joy Companies, Inc., ("Joy")

(collectively "Defendants") states as follows:

## JURISDICTION AND VENUE

1. This is a proceeding for reinstatement and damages to redress the deprivation of rights secured to Plaintiff by Section 7(b), 29 U.S.C. Section 626(b), of the Age Discrimination in Employment Act of 1967, as amended ("ADEA").

2. Plaintiff Gary Suiter, a 62 year-old male born on September 14, 1950, filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") on or about October 13, 2009, complaining of acts of age discrimination, the facts of which are alleged herein.

3. On or about February 19, 2013, more than 180 days having elapsed since the filing of his charge, the EEOC issued Plaintiff a notice informing him of his right to sue Defendants in court. Plaintiff received the notice on February 21, 2013.

4. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under the ADEA.

5. As the unlawful employment practices complained of herein occurred within Prince George's County, Maryland, venue is proper.

## PARTIES

6. At all times relevant hereto, Plaintiff resided at 3763 Foxhall Drive, White Plains, Maryland 20695, and was a resident of the State of Maryland.

7. At all times relevant hereto, Defendant B. Frank Joy was a corporation licensed and doing business in the State of Maryland. Defendant B. Frank Joy is an employer within the meaning of Section 11(b) of the ADEA, 29 U.S.C. Section 630(b). Defendant B. Frank Joy is a regional underground contractor. Defendant B. Frank Joy is engaged in an industry affecting commerce and employed twenty-five or more employees at all times relevant hereto.

8. At all times relevant hereto, Defendant Joy was a District of Columbia corporation doing business in the State of Maryland. Defendant Joy is an employer within the meaning of Section 11(b) of the ADEA, 29 U.S.C. Section 630(b). Defendant Joy is a regional underground contractor. Defendant Joy is engaged in an industry affecting commerce and employed twenty-five or more employees at all times relevant hereto.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9. Mike Roche, Vice President of Marketing, Estimating, and Sales terminated Mr. Suiter on June 12, 2009. Mr. Suiter's termination was the result of age discrimination.

10. Mr. Suiter is 62 years old. He began working for B. Frank Joy in 1990 as a Compressor Operator/Crew Leader. In August 1997, Mr. Suiter was promoted to Foreman. In 1999 he was promoted to General Foreman. In 2000, he was promoted to Superintendent. In 2002, his title was "reclassified" as Training Manager. Also in 2002, Mr. Suiter was one of the first selected by the Executive Staff to join a new group called the "Greater Team" (which reviewed the strategy of the Executive Team, made suggestions for improvement, and helped establish objectives for reaching the companies' goals), and he remained a member of the Greater Team until his termination in 2009. In late 2003/early 2004, Mr. Suiter became a member of the Marketing, Estimating, and Sales Team and assumed significant business development responsibilities. In 2005, Defendants increased Mr. Suiter's role in business development and assigned him the role of Project Manager for the Sewer Rehabilitation Division. In September 2006, Defendants recognized Mr. Suiter's promotion and increasing responsibilities by giving him the official title of Business Development Manager. As Business Development Manager, Mr. Suiter was responsible for the development and implementation of revenue growth. He developed relationships with existing and potential customers, engineers,

engineering firms, general contractors, fiber optic users, and sewer system owners. In 2008, Mr. Suiter was invited to join the Executive Team at its annual strategic planning meeting in Albuquerque, New Mexico. He was one of the only two non-executive employees to ever be invited to join this strategic planning meeting. Mr. Suiter continued in the Business Development Manager position until he was terminated on June 12, 2009. He always performed satisfactory work, receiving favorable evaluations, salary increases, and bonuses throughout his 19-year tenure with Defendants.

11. During the later years of his employment with Defendants, numerous supervisors made numerous inappropriate remarks relating to Mr. Suiter's age. For example:

   a. In late 2008, Mr. Roche asked Mr. Suiter when he planned to retire.

   b. In early March 2008, at a basketball reception, Mr. Suiter overheard Ken Joy, President of Joy and owner of both Defendants, tell a customer that he recently rebuilt his Leadership Team but did not include older employees. Mr. Joy commented that it did not make sense to include older employees in their mid-50s to 60s.

   c. During a November 4, 2008, strategic planning meeting to discuss Defendants' "Strengths, Weakness, Opportunities, and Threats Survey," the first weakness discussed was the aging workforce. Melissa Koehler, President and Chief Financial Officer of B. Frank Joy, led this meeting and distributed materials listing this topic.

   d. In October 2008, shortly after the company's annual crab feast, Mr. Suiter overheard Danna Hewick, Human Resources Manager, tell Ms. Koehler how old the workers looked in a photograph taken at the company's crab feast.

   e. In 2008, Ms. Koehler complained about Joy's aging workforce.

   f. In late 2008, at a Greater Team meeting, Mr. Joy discussed the possibility of instituting a mandatory retirement age for the Joy workforce. Mr. Suiter was alarmed and broken-hearted to hear these age-related comments. These comments showed Defendants' discriminatory animus toward older employees.

  12. On June 12, 2009, Defendants acted on its discriminatory animus when it terminated Mr. Suiter. Mr. Suiter was shocked, as he had always received satisfactory evaluations of his performance during his 19-year tenure with Defendants. Defendants replaced him with a 43-year-old employee, Richard Stone. Mr. Suiter is substantially older than his replacement.

  13. Defendants have no legitimate, non-discriminatory reason for the termination. Mr. Suiter's work history confirms a steady pattern of bringing in new work for Defendants. For example, in or about 2005, Mr. Suiter was instrumental in securing a large project with Washington Suburban Sanitary Commission's ("WSSC") Wastewater Collection Group. Mr. Suiter also secured new work from multiple sources, including: the Maryland State Highway Administration-Cecil County in 2004/2005; the Town of Kensington, Maryland, in 2005; Arlington County, Virginia, in 2005; and the Town of Leesburg, Virginia, in 2009. In 2006, Mr. Suiter secured an opportunity with engineering firm Malcolm Pirnie, which led to multiple contracts. In April 2009, Mr. Suiter secured another very profitable contract with WSSC by successfully persuading WSSC to "spec" or specify one of Defendants' products (the "T-Liner") as a preferred product on its projects. Moreover, Mr. Suiter's initial financial goal for 2008 was to provide $17.5 million in bid opportunities for site utilities, FiberNet Construction, LLC, sewer maintenance, and rehabilitation maintenance, of which $7.5 million was to come from Base Realignment and Closure ("BRAC") military or federal projects. By the third quarter of 2008,

Mr. Suiter had already far exceeded this amount at $44 million. Consistent with Mr. Suiter's excellent job performance, the Unemployment Division found no evidence of disqualifying misconduct and allowed benefits.

14. While Defendants may argue that Mr. Suiter was terminated because he lacked an engineering background, Mr. Suiter was never told that an engineering background was a requirement for his position. Mr. Suiter regularly spoke with engineers prior to B. Frank Joy's bidding on any project it was serious about trying to win, including engineers at Black & Veatch and Malcolm Pirnie, two of the country's largest engineering firms. Mr. Suiter, despite not having an engineering background, was instrumental in getting B. Frank Joy qualified with the WSSC to be able to bid on a sewer maintenance contract and was productive at his job. He conducted field demonstrations on product installations and attended many local, national, and international trade shows. Accordingly, it is incredulous that in June 2009, Defendants suddenly realized that Mr. Suiter's position required an engineering degree even though Mr. Suiter had been successfully marketing Defendants since 2004.

15. As a result of the discrimination, Mr. Suiter has suffered severe emotional distress (including a lack of confidence and sleeplessness), lost wages (including front and back pay), and attorneys' fees and costs.

## COUNT I
### (Age Discrimination in Employment Act of 1967)

18. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 17 of this Complaint with the same force and effect as if set forth herein.

19. Defendants have discriminated against Plaintiff in the terms and conditions of his employment on the basis of his age in violation of the ADEA.

20. The above acts and practices of Defendants constitute unlawful discriminatory employment practices within the meaning of the ADEA.

21. Defendants' acts were with malice and reckless disregard for Plaintiff's protected civil rights.

22. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until this Court grants relief.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

    a. Declaring that the acts and practices complained of herein are in violation of the ADEA;

    b. Enjoining and permanently restraining these violations of the ADEA;

    c. Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

    d. Directing Defendants to make Plaintiff whole for all earnings he would have received but for Defendants' discriminatory and retaliatory treatment, including, but not limited to, wages, pension, and other lost benefits;

    e. Awarding Plaintiff compensatory and punitive damages;

    f. Awarding Plaintiff the costs of this action together with reasonable attorneys' fees, as provided by the ADEA;

    g. Directing Defendants to pay Plaintiff compensatory damages and damages for his mental anguish and humiliation; and

    h. Granting such further relief as this Court deems necessary and proper.

### REQUEST FOR JURY TRIAL

Plaintiff, pursuant to Maryland Rule 2-325, prays a trial by jury on all issues.

Respectfully submitted,

RIFKIN, LIVINGSTON, LEVITAN &
SILVER, LLC

Joyce E. Smithey, Esq.
225 Duke of Gloucester Street
Annapolis, Maryland 21401
(410) 269-5066 (phone)
(410) 269-1235 (fax)
jsmithey@rlls.com

Attorney for Plaintiff Gary Suiter

Date: May 22, 2013